1

2                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
3                         EASTERN DIVISION

4       UNITED STATES OF AMERICA,

5               Plaintiff,          Case No. 1:18CR513
                                    Cleveland, Ohio
6           vs.                     Tuesday, November 19, 2019
                                    11:13 a.m.
7       AARON L. EISENBERG,

8               Defendant.

9

10            TRANSCRIPT OF CHANGE OF PLEA HEARING
          BEFORE THE HONORABLE JONATHAN D. GREENBERG
11             UNITED STATES MAGISTRATE JUDGE

12

        APPEARANCES:
13

        For the Government:  Aaron P. Howell
14                           Office of the U.S. Attorney - Akron
                             2 South Main Street, Room 208
15                           Akron, Ohio 44308
                             (330) 375-5716
16
        For the Defendant:   Angelo F. Lonardo
17                           Yelsky & Lonardo
                             323 Lakeside Avenue, W, Suite 450
18                           Cleveland, Ohio 44113
                             (216) 781-2550
19
        Court Reporter:      Caroline Mahnke, RMR, CRR, CRC
20                           Federal Building & U.S. Courthouse
                             2 South Main Street, Suite 568
21                           Akron, Ohio 44308
                             (330) 252-6021
22

23

24
        Proceedings recorded by ECRO; transcript produced by
25      computer-aided transcription.

1          <u>Tuesday, November 19, 2019</u>

2          THE DEPUTY CLERK:  All rise.

3          THE COURT:  Thank you.  Please be seated.

4          THE DEPUTY CLERK:  Court calls Case Number

5    1:18CR513, United States of America versus Aaron Eisenberg.

6          THE COURT:  Good morning.

7       On behalf of the United States.

8          MR. HOWELL:  Good morning, Your Honor.  Aaron

9    Howell on behalf of the United States.

10         THE COURT:  On behalf of the defendant.

11         MR. LONARDO:  Angelo Lonardo on behalf of Aaron

12   Eisenberg, Your Honor.

13         THE COURT:  Thank you.

14      Mr. Howell, is this a matter that the Crime Victims'

15   Rights Act would apply to?

16         MR. HOWELL:  No, Your Honor.

17         THE COURT:  Very well.

18      Sir, you are Aaron L. Eisenberg?

19         THE DEFENDANT:  Yes.

20         THE COURT:  You can be seated, but I appreciate

21   it.

22      Why don't you slide that microphone up to you so we

23   can hear you and record what you're saying.

24      Sir, I have been informed you wish to plead guilty

25   today.  Is my understanding correct?

1       THE DEFENDANT:  Correct.

2       THE COURT:  Sir, I also understand you have

3  consented to this Court receiving your plea.

4     Is that correct?

5       THE DEFENDANT:  Correct.

6       THE COURT:  I have the original consent form with

7  me here on the bench.  I would like you to take a look at

8  it, please.

9     Sir, is that your signature on the consent form?

10       THE DEFENDANT:  It is.

11       THE COURT:  Have you discussed that consent with

12  your attorney?

13       THE DEFENDANT:  I did.

14       THE COURT:  Sir, do you understand you have a

15  right to offer your guilty plea to Judge Boyko, the trial

16  judge in this case?

17       THE DEFENDANT:  Yes.

18       THE COURT:  You need to speak into the

19  microphone.

20       THE DEFENDANT:  Yes.

21       THE COURT:  And do you understand that by giving

22  this consent to my jurisdiction you give up your right to

23  offer your guilty plea directly to Judge Boyko?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Sir, do you still wish to proceed

1    with your plea here today?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Sir, the purposes of this proceeding

4    are to establish you're competent to make a plea -- you can

5    sit up, please -- that you're competent to make a plea, to

6    make sure that your plea is free and voluntary, to be

7    certain that you understand the charges asserted against

8    you, the maximum penalties for those charges, and the

9    constitutional rights that you will be giving up by pleading

10   guilty.

11        Sir, we will also determine that there is a factual

12   basis for the plea and then to receive your plea.

13        During today's proceeding I'll be asking you a series

14   of questions.  The court reporter will record my questions

15   and your answers.  Only spoken or oral answers can be

16   recorded as opposed to a nod of the head or any other kind

17   of gesture.  So please clearly state your answers.

18        If you don't understand the questions or at any time

19   you wish to consult with your attorney, please say so

20   because it's essential to a valid plea that you understand

21   each question before you answer.

22        Do you understand these instructions?

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  Again, you need to speak into the

25   mic.  We need to be able to take your --

1        THE DEFENDANT:  Yes.

2        THE COURT:  Sir, you have a right to remain

3   silent.  You are not required to make a statement.  Anything

4   you say may be used against you.  Before receiving your

5   guilty plea, there are a number of questions I will ask to

6   assure that your plea is valid.  By answering these

7   questions, you will be making statements against your

8   interest and you will incriminate yourself.

9        Do you understand that by proceeding here today with a

10  guilty plea you will necessarily be giving up your right to

11  remain silent?

12        THE DEFENDANT:  Yes.

13        THE COURT:  The clerk will please swear in the

14  defendant.

15        (The Defendant was sworn in.)

16        THE COURT:  Please be seated.

17        Now, as part of this proceeding I must determine that

18  you're competent, that is, that you understand the

19  proceedings and are entering a knowing plea.

20        What is your full name?

21        THE DEFENDANT:  Aaron Lee Eisenberg.

22        THE COURT:  Sir, how old are you?

23        THE DEFENDANT:  Forty years old.

24        THE COURT:  Are you a citizen of the United

25  States?

1      THE DEFENDANT:  Yes.

2           THE COURT:  How far did you go in school?

3           THE DEFENDANT:  I have a bachelor's degree from

4  The Ohio State.

5           THE COURT:  So I'm correct you're able to both

6  speak, understand, and read and write the English language?

7           THE DEFENDANT:  Correct.

8           THE COURT:  Are you currently on probation,

9  parole, or supervised release for any state or federal

10 conviction?

11          THE DEFENDANT:  No.

12          THE COURT:  In the last 12 months have you been

13 treated for any mental illness, addiction to alcohol, or

14 addiction to narcotic drugs?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Sir, is there anything about whatever

17 it is you've been treated for or any addiction you have that

18 inhibits your ability to understand what's happening here

19 today in court?

20          THE DEFENDANT:  No.

21          THE COURT:  Well, let me ask you this.  In the

22 past 24 hours, have you taken any medication, drugs, or

23 alcohol?

24          THE DEFENDANT:  Medication, yes.

25          THE COURT:  So would that also be the issue as it

1   relates to -- these are prescribed medications?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  So in the last 12 months you've also

4   received prescribed medications.  Is that a fair statement?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Is there anything about those

7   medications that makes it difficult for you to understand me

8   talking to you?

9                    THE DEFENDANT:  No.

10                   THE COURT:  Is there anything about those

11  medications that makes it difficult for you to understand

12  what I'm saying to you?

13                   THE DEFENDANT:  No.

14                   THE COURT:  Is there anything about those

15  medications that makes it difficult for you to have

16  meaningful conversation with Mr. Lonardo and decide what's

17  the best course of action and for you to understand his

18  advice?

19                   THE DEFENDANT:  I'm good.

20                   THE COURT:  So that means no, there is nothing

21  about it?

22                   THE DEFENDANT:  Nothing.

23                   THE COURT:  Mr. Howell, do you have any doubt as

24  to this defendant's competence to plead at this time?

25                   MR. HOWELL:  No, Your Honor.

1      THE COURT:  Mr. Lonardo, do you have any doubt as

2   to your client's competence to plead at this time?

3      MR. LONARDO:  I have no doubt as to his

4   competence to plea at this time.

5      As the plea agreement indicates, he has had mental

6   health issues.  I've been particularly sensitive towards

7   those.

8      We have had issues throughout our relationship, but as

9   we sit here today, I'm very confident that he understands

10   what's going on and he understands what's involved here and

11   that he's competent to enter a change of plea.

12      THE COURT:  Sir, you have a constitutional right

13   to be represented by an attorney at each and every stage of

14   these proceedings.  If you can't afford an attorney, one

15   will be appointed to represent you at no cost.

16      Now, you're currently being represented by Mr. Lonardo

17   here today.  Is that correct?

18      THE DEFENDANT:  Correct.

19      THE COURT:  Have you had enough time to discuss

20   the charges made against you and the response to those

21   charges with Mr. Lonardo?

22      THE DEFENDANT:  Yes.

23      THE COURT:  And are you completely satisfied with

24   your attorney's representation and the advice he's given

25   you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Sir, by proceeding with a guilty

3    plea, you'll be giving up several constitutional rights.  I

4    next want to review with you those rights and establish you

5    understand what you're giving up by pleading guilty.

6          You have a right to stand by your plea of not guilty

7    and to require the government to proceed to trial.

8          You have a right to a trial by jury including the

9    assistance of counsel at trial.

10          At such a trial, you would be presumed innocent and

11    the government would be required to prove you guilty by

12    competent evidence beyond a reasonable doubt.  You would not

13    have to prove that you're innocent.

14          Do you understand these rights?

15               THE DEFENDANT:  Yes.

16          THE COURT:  And do you understand that by

17    pleading guilty you'll be giving up these rights?

18               THE DEFENDANT:  Yes.

19          THE COURT:  Sir, you also have a right to

20    compulsory process.  That is, at trial you have the right to

21    the issuance of subpoenas to require the attendance of

22    witnesses to testify on your behalf or produce exhibits or

23    documents for trial.

24          Do you understand your right to compulsory process?

25               THE DEFENDANT:  Yes.

1    THE COURT:  And, sir, do you understand that by

2    pleading guilty you'll be giving up this right?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Sir, you also have the right to see,

5    hear, and cross-examine all witnesses that the United States

6    may present against you.

7    Do you understand your right to confront the witnesses

8    who would testify against you?

9    THE DEFENDANT:  Yes.

10   THE COURT:  And do you understand that by

11   pleading guilty you'll be giving up this right?

12   THE DEFENDANT:  Yes.

13   THE COURT:  Sir, you have the right to remain

14   silent at trial.  While you would have the right to testify

15   if you chose to do so, you would also have the right not to

16   testify, and no inference or suggestion of guilt could be

17   drawn from the fact that you did not testify.

18   Do you understand your right to remain silent?

19   THE DEFENDANT:  Yes.

20   THE COURT:  And do you understand that by

21   pleading guilty you will be giving up this right?

22   THE DEFENDANT:  Yes.

23   THE COURT:  Sir, as I stated earlier, if you

24   proceed with your plea of guilty, you give up your right not

25   to incriminate yourself.  You will have to acknowledge that

1    you engaged in criminal conduct to make a valid guilty plea.

2          Do you understand your right not to incriminate

3    yourself?

4                THE DEFENDANT:  Yes.

5                THE COURT:  And do you understand that by

6    pleading guilty you will be giving up this right?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Now, if you plead guilty and Judge

9    Boyko accepts your plea, do you understand that you give up

10   your right to trial and the other rights I've just

11   discussed, that there will be no trial, and that the

12   district judge will enter a judgment of guilty and sentence

13   you on the basis of your guilty plea after considering a

14   presentence report?

15         Do you understand this, Mr. Eisenberg?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Do you understand the offense to

18   which you're pleading guilty is a felony offense and that a

19   judgment of guilty may deprive you of other civil rights

20   such as the right to vote, the right to hold public office,

21   the right to serve on a jury, and the right to possess any

22   kind of firearm?

23               THE DEFENDANT:  Yes.

24               THE COURT:  Sir, do you have a copy of the

25   indictment?

1       THE DEFENDANT:  Yes.

2       THE COURT:  Have you discussed with your attorney

3    the charges in the indictment to which you intend to plead

4    guilty?

5       THE DEFENDANT:  Yes.

6       THE COURT:  Do you understand the charges made

7    against you in the indictment?

8       THE DEFENDANT:  Yes.

9       THE COURT:  Mr. Howell, can you please state for

10   the record what the possible penalties, the maximum possible

11   penalties for all the counts to which Mr. Eisenberg intends

12   to plead?

13      MR. HOWELL:  Yes, Your Honor.

14      In regards to Count 1, the statute is Title 18, United

15   States Code, Section 1956(h), conspiracy to launder money.

16      Faces a maximum term of imprisonment of up to 20

17   years, a maximum statutory fine of $4.6 million, maximum

18   period of supervised release of three years, and a mandatory

19   $100 special assessment.

20      Count 7, same code section, Title 18, United States

21   Code, Section 1956(h), conspiracy to launder money.

22      Same penalties in regards to the maximum term of

23   imprisonment, 20 years.  Maximum statutory fine for Count 7

24   is $493,809.  The maximum period of supervised release is

25   three years.  And there is a $100 mandatory special

1    assessment.

2            THE COURT:  Is there any restitution, Mr. Howell?

3            MR. HOWELL:  No, Your Honor.

4            THE COURT:  And any forfeiture?

5            MR. HOWELL:  Yes, Your Honor.

6        In regards to the forfeiture, the defendant has

7    reviewed the forfeiture provision contained in the

8    indictment.  Defendant states he's not the owner of, has no

9    interest in, and will not contest the forfeiture of the

10   assets listed therein.

11           THE COURT:  Mr. Eisenberg, do you understand the

12   maximum possible penalties you're facing?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Do you also understand the forfeiture

15   issue which was just described by Assistant United States

16   Attorney Howell?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And do you also understand the

19   Court's obligation to impose a special assessment in this

20   case?

21           THE DEFENDANT:  I'm not sure what the special

22   assessment means.

23           MR. LONARDO:  It's $100 for each count.

24           THE COURT:  Mr. Lonardo, would you like a moment

25   with your client?

1          Why don't you do the white noise.

2          (Pause.)

3                    THE DEFENDANT:  Okay.

4                    THE COURT:  So, again I ask you, do you

5     understand the Court's obligation to impose a special

6     assessment in this case?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  Let me finish the question before you

9     answer.

10          Do you understand the Court's obligation to impose a

11    special assessment in this case?

12                    THE DEFENDANT:  Yes.

13                    THE COURT:  Sir, is your desire to plead guilty

14    the result of an exercise of your own free will?

15                    THE DEFENDANT:  Yes.

16                    THE COURT:  Has anyone threatened you or

17    threatened anyone else or forced you in any way to plead

18    guilty?

19                    THE DEFENDANT:  No.

20                    THE COURT:  It's my understanding a plea

21    agreement has been entered into between you and the United

22    States or your lawyer on your behalf; is that correct?

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  Do you have a copy of the plea

25    agreement?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I would like you to take a look at my

3     copy which is an original.

4          Mr. Eisenberg, is that your signature on the last page

5     of the plea agreement?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You didn't even look.

8          THE DEFENDANT:  It seemed redundant.

9     Yes.

10          THE COURT:  Now, at the bottom right-hand corner

11     of each page there are initials.  Do you see those initials?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And are those your initials?

14          THE DEFENDANT:  They are.

15          THE COURT:  Written by you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Look at page 2 of the plea agreement.

18     There is a handwritten edit that says "three years."

19          Do you see that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And there is initials there; is that

22     correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Is one of those initials yours?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Have you had an opportunity to read

2     and discuss this plea agreement with your lawyer before you

3     signed it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And do you understand the terms of

6     the plea agreement?

7          THE DEFENDANT:  Yes.

8          THE COURT:  The clerk will retrieve the plea

9     agreement, please.

10        Thank you.

11        Mr. Howell, will you please state the substance of the

12    plea agreement for the record.

13         MR. HOWELL:  Yes, Your Honor.

14         THE COURT:  You can be seated if you would like.

15    You don't have to --

16         MR. HOWELL:  I feel more comfortable.  Is

17    that okay?

18         THE COURT:  Sure.

19         MR. HOWELL:  Thanks.

20        The defendant agrees to plead guilty to Counts 1 and 7

21    of the indictment in this case.

22        And as terms of his plea agreement, at sentencing the

23    United States Attorney's Office will move to dismiss the

24    charges against the defendant in Counts 2 and 3 of the

25    indictment in this case.

1      The parties have agreed that there is a stipulated

2   guideline computation noted at paragraph 17 of the plea

3   agreement.

4      Additionally, at this time the United States

5   Attorney's Office has agreed to recommend the third level

6   for acceptance of responsibility at the time of sentencing.

7      As terms of the plea agreement, there is no agreement

8   in regards to criminal history category.

9      As terms of the plea agreement, the defendant

10  acknowledges that he has waived his right to appeal except

11  for specific instances which are noted at paragraph 20.

12     Specifically, he reserves the right to appeal any

13  punishment in excess of the statutory maximum or any

14  sentence to the extent it exceeds the maximum of the

15  sentencing imprisonment range determined under the advisory

16  sentencing guidelines in accordance with the sentencing

17  stipulations and computations in this agreement.

18     Additionally, at paragraph 14, the defendant's counsel

19  may bring to the Court's attention mental health issues

20  concerning the defendant and will also request the Court

21  recommend the defendant for the intense drug treatment

22  program.

23     Other than that, the United States and defense counsel

24  and the defendant have agreed that after considering Title

25  18, United States Code 3553(a) factors, the parties will

1    recommend that the Court impose a sentence within the range

2    and the kind specified pursuant to the advisory sentencing

3    guidelines according to the computation at paragraph 17.

4         The parties have also agreed to a factual basis and

5    relevant conduct which is noted at paragraph 22.

6              THE COURT:  Thank you.

7         Mr. Lonardo, are you in accord with the substance of

8    the plea agreement as stated by Assistant United States

9    Attorney Howell?

10             MR. LONARDO:  Yes, I would concur, Your Honor, in

11   the representations made by Mr. Howell.

12             THE COURT:  Mr. Eisenberg, are you in accord with

13   the substance of the plea agreement as stated by Assistant

14   United States Attorney Howell?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Mr. Eisenberg, has anyone, including

17   your lawyer, the lawyer for the government, this Court, or

18   any other Court made any promise to you other than those

19   contained in the plea agreement to induce you to plead

20   guilty?

21             THE DEFENDANT:  No.

22             THE COURT:  Sir, do you understand that if I

23   recommend the acceptance of this agreement and Judge Boyko

24   accepts my recommendation, that then you cannot withdraw

25   your guilty plea?

1            THE DEFENDANT:  Yes.

2            THE COURT:  I direct your attention to page 6,

3     paragraph 20 of the plea agreement.

4        Sir, do you understand that you cannot appeal your

5     sentence except under the limited circumstances permitted by

6     that section?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Sir, do you understand that you

9     cannot contest your conviction or sentence by any

10    post-conviction proceedings?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Sir, have you and your attorney

13    discussed how the Sentencing Commission Guidelines might

14    apply to your case?

15           THE DEFENDANT:  Yes.

16           THE COURT:  I direct your attention to paragraphs

17    12 through 19 of the plea agreement beginning on page 4.

18        Sir, do you understand that the paragraph -- these

19    paragraphs discuss the application of the sentencing

20    guidelines to your case?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And have you and your attorney

23    discussed the range of sentence that you may receive?

24           THE DEFENDANT:  Um-hum, yes.

25           THE COURT:  Mr. Lonardo, if you can, without

1    waiving any attorney-client privilege, please state for the

2    record the substance of the discussion you've had with Mr.

3    Eisenberg as it relates to the range of sentence he may

4    receive pursuant to the sentencing guidelines?

5            MR. LONARDO:  Yes, Your Honor.

6        As set forth in the plea agreement, we have discussed

7    that he starts -- what the offense level is to begin with, a

8    level 30, where he sits in the sentencing table regarding

9    that; our understanding and belief that he would receive a

10    three-level downward deduction for acceptance of

11    responsibility because he is accepting responsibility for

12    the offense conduct as set forth in the plea agreement, that

13    that would bring him -- it's my understanding and belief

14    that he falls into a category number I.  That would bring

15    him to a 70 to 87 month range.

16        I also told him that I also intended to bring to the

17    Court the history of his -- his mental health history and

18    other relevant considerations in the sentencing memorandum

19    and that it would be up to the Court as to where he would

20    fall within 70 to 87 months.

21        I indicated to him that I fully expected him to get a

22    recommendation for the drug treatment program because he

23    desperately needs that program.  That program has been very

24    successful in the past with other clients of mine.  And that

25    would further reduce his sentence downward, that he would be

1    given credit for time served in this matter, and that he

2    would also, if he lived within the requirements of the

3    institution, in the federal institution he gets credit

4    for -- good conduct credit which is a motivating factor.

5    And we reviewed that aspect of it.

6         We reviewed the aspect that there is no role in the

7    offense for him that's set forth in the plea agreement and

8    applicable in this change of plea.  And that certainly

9    benefits him, especially under the First Step Act because

10   under the First Step Act that recently came into effect he

11   wouldn't be eligible for any further reductions if he had a

12   role in the offense.

13        So --

14            THE COURT:  I'm sorry to interrupt you, Mr.

15   Lonardo.  I just want to make sure, though, that you, for

16   the record, can tell me the specifics of the conversation,

17   if you're not going to be violating any privilege, as it

18   relates to the application of the sentencing guidelines.

19            MR. LONARDO:  Right.  We did.

20            THE COURT:  Thank you very much.

21        Mr. Eisenberg, are you in agreement with what your

22   attorney has just stated?

23            THE DEFENDANT:  What did you -- I'm sorry.  I

24   missed that.

25            THE COURT:  Are you listening to me?

1          THE DEFENDANT:  Yeah.

2          THE COURT:  Okay.

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you in agreement with what your

5   lawyer just said?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Very well.

8       Does the counsel for the United States, Mr. Howell,

9   agree with the substance of defense counsel's position on

10  the applicable sentencing range?

11         MR. HOWELL:  Yes, Your Honor.  The statements

12  that Mr. Lonardo expressed to the Court are consistent with

13  the conversations that we've had throughout the case and are

14  consistent with the terms of the plea agreement.

15         THE COURT:  Thank you.

16      Mr. Eisenberg, do you understand that sentencing rests

17  within the discretion of the Court and that the federal

18  sentencing law requires the Court to impose a sentence which

19  is sufficient but not greater than necessary to comply with

20  the purposes of sentencing as set out in the United States

21  Code.  And in doing so, the Court must consider the advisory

22  United States Sentencing Guidelines we've been discussing

23  here in open court?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Sir, do you understand, however, that

1    the Court will determine the advisory United States

2    sentencing guideline imprisonment range after a presentence

3    report has been prepared by the United States Probation

4    Office?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Sir, do you understand that any

7    recommendations contained in the plea agreement are not

8    binding on the Court and the Court may impose any sentence

9    provided by law up to the maximum we previously discussed?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Sir, do you understand the Court

12   alone will decide the applicable sentencing range under the

13   advisory sentencing guidelines, whether there is any reason

14   to depart from that range or impose a sentence outside of

15   the guidelines and what sentence to impose?

16        In other words, do you understand that the sentence

17   that the Court may impose may be different from any estimate

18   that your attorney has given you?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Sir, do you understand that if the

21   Court imposes a sentence different from what is recommended

22   by the government or your attorney, you have no right to

23   withdraw your guilty plea?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Sir, do you also understand, as

1    previously discussed, it is only under some limited

2    circumstances that you or the government may have the right

3    to the appeal any sentence imposed?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Sir, do you also understand that

6    parole has been abolished and if you're sentenced to prison

7    you will not be released early on parole?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Having discussed your rights with

10   you, do you still wish to proceed with your guilty plea?

11                   THE DEFENDANT:  I do.

12                   THE COURT:  We'll now review with you the portion

13   of the plea agreement in which you stipulate as to the facts

14   that relate to your conduct as charged in the indictment.

15        You will have an opportunity to correct any facts you

16   believe to be incorrect.

17        I direct your attention to page 7, paragraph 22 of the

18   plea agreement.

19        Mr. Howell, please read the factual basis.

20                   MR. HOWELL:  Thank you, Your Honor.

21        In paragraph 22 it starts out, the first paragraph,

22   paragraph and a half, are just the language of the statute

23   as cited in the indictment as to Count 1.

24        Starting on page 8, Eisenberg directed Codefendant

25   Jack W. Morgan to ship pallets filled with packages of

1     marijuana from California to warehouses in Euclid,

2     Wickliffe, and Willoughby, Ohio using a commercial carrier

3     called Specialized Transportation, Incorporated.

4          Eisenberg and others attempted to conceal the nature

5     of the contents of the pallets containing marijuana by

6     labeling the contents of the pallets as items such as

7     computer parts.

8          Morgan coordinated the shipment of bulk United States

9     currency via STI, which stands for Specialized

10    Transportation, Incorporated, from the warehouses in Euclid,

11    Wickliffe, and Willoughby, Ohio back to Eisenberg in

12    California.

13         The defendants attempted to conceal the identity of

14    the sender and receiver of the pallets containing the United

15    States currency by labeling the pallets with the names of

16    companies that do not exist.

17         From on or about May 28, 2014 through on or about July

18    29, 2015, Morgan shipped approximately 1,997 pounds of

19    marijuana from marijuana to the warehouses in the Northern

20    District of Ohio and also shipped approximately --

21              THE COURT:  I think you didn't quite get that

22    right.

23         Why don't you start over from "from on or about May

24    28."

25              MR. HOWELL:  Through on or about July 29, 2015,

1    Morgan shipped approximately 1,997 pounds of marijuana from

2    California to the warehouses in the Northern District of

3    Ohio and shipped approximately $2,333,720 in United States

4    currency from the Northern District of Ohio to California.

5         Eisenberg paid Morgan an agreed-upon amount above the

6    agreed-upon fee for shipping the marijuana and the bulk

7    United States currency.

8         Eisenberg used some of the United States currency that

9    he received to pay his living expenses, and he invested some

10   of it in businesses to attempt to conceal the actual nature

11   of his business and the source of the United States

12   currency.

13        Eisenberg agrees that the United States can prove

14   beyond a reasonable doubt that he and his coconspirators

15   performed and caused others to perform acts in the Northern

16   District of Ohio and elsewhere, including but not limited to

17   all the acts outlined in Count 1 of the indictment, all in

18   furtherance of the money laundering conspiracy.

19             THE COURT:  Mr. Eisenberg, do you agree with the

20   facts as stated so far by Assistant United States Attorney

21   Howell?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Mr. Howell.

24             MR. HOWELL:  Thank you, Your Honor.

25        Then we move to the facts in support of Count 7.

1       In September of 2013, Aaron Eisenberg rented a

2   commercial space at a building in Cleveland, Ohio under the

3   name of Iceberg Promotions LLC.

4       The commercial space included a hair salon, barber

5   shop, and tattoo parlor, collectively referred to as The

6   Reserve.

7       Eisenberg hired Codefendant Cynthia Hounshell to

8   manage the commercial space for renovations and the

9   businesses, including the hair salon, barber shop, and

10  tattoo parlor.

11      Eisenberg and Hounshell knowingly used proceeds from

12  the distribution of marijuana to establish, renovate, and

13  operate the businesses at The Reserve.

14      Between November of 2013 and May of 2014, Eisenberg

15  set up a series of bank accounts at Fifth Third Bank for the

16  businesses at The Reserve through which he and Hounshell

17  both had signature authority.

18      In December of 2013, Hounshell opened a new bank

19  account for Endless Interior Designs & Consulting LLC at

20  Fifth Third Bank.

21      Eisenberg and Hounshell deposited or caused to be

22  deposited cash in the bank accounts in the name of Millberg

23  LLC, and Endless Interior Design & Consulting LLC in an

24  effort to conceal the source of the cash.

25      They deposited cash into what appeared to be

1    legitimate business accounts to conceal the fact the cash

2    was marijuana distribution proceeds.

3          Eisenberg and Hounshell knowingly used the funds which

4    were the proceeds from the distribution of the marijuana in

5    the Fifth Third bank accounts of Millberg LLC and Endless

6    Interior Design & Consulting LLC to pay expenses associated

7    with the establishment, renovation, and operation of the

8    businesses at The Reserve.

9          In furtherance of the conspiracy and to affect the

10   goals to conceal the existence of the money laundering

11   conspiracy, Defendants Eisenberg and Hounshell performed and

12   caused others to perform acts in the Northern District of

13   Ohio and elsewhere, including but not limited to the

14   following:

15         Your Honor, and if it would please the Court, what's

16   outlined from the remainder of pages 10 through 18 are the

17   specific deposits that were referenced above in the facts

18   during the dates that were also outlined in the stipulation

19   of facts.

20         And if it would please the Court, I wouldn't want to

21   read every one of those in if that's okay.

22         THE COURT:  Yeah, I was just going to have you

23   read the remainder of that sentence from the dates.

24         MR. HOWELL:  Okay.

25         THE COURT:  And instead of saying "the following

1    amounts," I think, if it's okay with you, Mr. Lonardo, "in

2    the aggregate amount," which is the total at the end.

3         Is that acceptable to you, Mr. Lonardo?

4              MR. LONARDO:  That's acceptable to the defense,

5    Your Honor.

6              THE COURT:  Thank you.

7         Mr. Howell.

8              MR. HOWELL:  Thank you, Your Honor.

9         From on or about December 2, 2013 to on or about July

10   8 of 2015, Eisenberg and Hounshell deposited or caused to be

11   deposited cash, including proceeds of marijuana trafficking,

12   into Fifth Third Bank accounts in the name of Millberg LLC

13   and Endless Interior Designs & Consulting LLC -- and moving

14   to page 15 at the top of the page -- in the total of

15   $246,904.50 in total cash deposits.

16        And that's all in violation of Title 18, United States

17   Code, Section 1956(h).

18        Mr. Eisenberg, are you in total agreement with the

19   factual basis as contained in the plea agreement?

20        (Pause.)

21             THE DEFENDANT:  Sorry, Your Honor.

22             THE COURT:  You don't have to be sorry.  I told

23   you you can speak with your lawyer whenever you want.

24        Why don't you hit the white noise button, please.

25        Hold on once second, please, so we can get you some

1    privacy.

2        Go ahead.

3        (Defendant confers with counsel.)

4            THE COURT:  Mr. Lonardo, have you had ample time

5    to discuss with your client whatever issue he wanted to

6    discuss with you?

7            MR. LONARDO:  Yes, I have.

8            THE COURT:  Mr. Eisenberg, let me ask you again.

9    Are you in total agreement with the factual basis as

10   contained in the plea agreement?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Do you wish to make any changes to

13   the factual basis of the plea agreement as it's been read to

14   you?

15           THE DEFENDANT:  I can agree with my conduct.  I

16   agree with my own conduct, but I can't speak for others.

17           THE COURT:  Well, I understand.  So this is a

18   factual basis.  If you wish to amend it, we will suspend

19   these proceedings and you and your attorney and Mr. Howell

20   can meet as it relates to an acceptable factual basis.

21       Mr. Lonardo, we'll give you some more time.

22       (Counsel confers with defendant.)

23           THE COURT:  Let me begin this part of the

24   colloquy again with you, Mr. Eisenberg.

25           THE DEFENDANT:  Okay.

1          THE COURT:  Are you in total agreement with the

2     factual basis as contained in the plea agreement?

3          THE DEFENDANT:  I am.

4          THE COURT:  Do you wish to make any change in the

5     factual basis of the plea agreement as it's been read to

6     you?

7          THE DEFENDANT:  No.

8          THE COURT:  Mr. Lonardo, do you agree that the

9     factual basis covers each of the essential elements of the

10    offense to which Mr. Eisenberg intends to plead guilty?

11         MR. LONARDO:  Yes, I do, Your Honor.

12         THE COURT:  Mr. Howell, is there anything that

13    the Court has failed to cover prior to receiving the plea?

14         MR. HOWELL:  No, Your Honor.

15         THE COURT:  Is the United States and counsel for

16    the United States satisfied the Court has fulfilled the

17    requirements necessary pursuant to Criminal Rule 11?

18         MR. HOWELL:  Yes, Your Honor.

19         THE COURT:  Mr. Lonardo, is there anything the

20    Court has failed to cover prior to receiving your client's

21    plea?

22         MR. LONARDO:  No, Judge.

23         THE COURT:  Is counsel satisfied that the Court

24    has fulfilled the requirements necessary pursuant to

25    Criminal Rule 11?

1      MR. LONARDO:  Yes, I am, Your Honor.

2      THE COURT:  Mr. Eisenberg, I'm prepared to

3   receive your plea.  Would you like to confer with your

4   attorney before I ask you what your plea is?

5      THE DEFENDANT:  I'm ready.

6      THE COURT:  Is that a yes or no?

7      THE DEFENDANT:  Yes.

8      THE COURT:  Let me ask you again because you kind

9   of --

10     THE DEFENDANT:  Yeah, I think I --

11     THE COURT:  So the question is, I'm prepared to

12  receive your plea.  Do you want to confer with your attorney

13  before I ask you what your plea is?

14     THE DEFENDANT:  No.

15     THE COURT:  Do you have any questions of me

16  before I ask you what your plea is?

17     THE DEFENDANT:  No.

18     THE COURT:  Now, having advised you of your

19  rights, having established your competence, and having found

20  a factual basis for your plea, I ask you now, how do you

21  plead to Counts 1 --

22     MR. LONARDO:  Your Honor, if I just might for the

23  record.  I want to just make this is real clear.  I don't

24  want to give the impression that my client's taking this

25  lightly or anything else.  My client has a personality that

1   when he talks to you, sometimes he's smiling.

2            THE COURT:  I've not taken offense at anything.

3            MR. LONARDO:  Okay.  Great.

4        Sometimes I did when I was talking to him.  I said,

5   "What are you smiling at?"  He said, "Well, this is me."

6            THE COURT:  Well, look.  I can tell your client

7   to sit up or doing anything I want without taking offense to

8   it.  So I think I did tell you to sit up earlier.  I'm not

9   taking offense to it.

10       But let me go back to this conversation.

11           MR. LONARDO:  Okay.

12           THE COURT:  Having advised you of your rights,

13  having established your competence, and having found a

14  factual basis for your plea, I ask you now, how do you plead

15  to Counts 1 and 7 of the indictment, guilty or not guilty?

16           THE DEFENDANT:  Guilty.

17           THE COURT:  The record will reflect the defendant

18  has tendered a plea of guilty.

19       For the record, it is my understanding that the

20  defendant, Aaron L. Eisenberg, is fully competent to and

21  capable of entering an informed plea, that he is aware of

22  the nature of the charges brought against him and the

23  consequences of his plea, and that his plea of guilty to

24  Counts 1 and 7 of the indictment in this case is a knowing

25  and voluntary plea supported by an independent basis in fact

1    containing each of the essential elements of the offenses

2    charged.

3         I therefore recommend that Judge Boyko approve the

4    plea agreement, accept Mr. Eisenberg's plea, and adjudge him

5    guilty of the offense charged -- the offenses charged in

6    Counts 1 and 7 of the indictment.

7         Mr. Eisenberg, the Court will order a presentence

8    investigation report prior to sentencing.  I advise you that

9    it's in your best interest to cooperate with the probation

10   officer in furnishing information for that report since that

11   report will be important in the decision as to what your

12   sentence will be.

13        You and your attorney will have a right and will have

14   an opportunity to examine the report and comment on it at

15   the time of sentencing.

16        The disposition sentence in this case has been set for

17   March 4, 2020 at 11:00 a.m. before Judge Boyko.

18        The defendant is in pretrial detention, is therefore

19   remanded to the custody of the United States marshal.

20        Is there anything further on behalf of the United

21   States?

22             MR. HOWELL:  No, Your Honor.  Thank you.

23             THE COURT:  Anything further on behalf of the

24   defendant?

25             MR. LONARDO:  No.  Thank you, Judge.

1    THE COURT:  Very well.  We are in recess.

2    THE DEPUTY CLERK:  All rise.

3   (Proceedings concluded at 11:48 a.m.)

4

5    C E R T I F I C A T E

6

7    I certify that the forgoing is a correct

8 transcript from the record of proceedings in the

9 above-entitled matter.

10

11    S/Caroline Mahnke   11/26/2019

12    Caroline Mahnke, RMR, CRR, CRC  Date

13

14

15

16

17

18

19

20

21

22

23

24

25